CHARLES W. BASHAM, JR. AND ARMINDA I. BASHAM, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Basham v. Commissioner
Docket No. 5871-78.
United States Tax Court
T.C. Memo 1980-545; 1980 Tax Ct. Memo LEXIS 42; 41 T.C.M. (CCH) 505; T.C.M. (RIA) 80545; December 8, 1980
Paul T. Wright, for the petitioners. Jeff P. Ehrlich, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: This case was tried before Special Trial Judge John J. Pajak pursuant to Rule 180, Rules of Practice and Procedure of the United States Tax Court. His report was served on the parties. No exceptions to the report were filed. After careful consideration, the Special Trial Judge's report, which is set forth below, is adopted. REPORT OF SPECIAL TRIAL JUDGE *
PAJAK, Special Trial Judge: Respondent determined a deficiency in petitioners' income tax for the year 1975 in the amount of $ 10,266.70, plus an addition to tax under section *44 6653(a) [1] of $ 513.34. The issues to be decided are: 1. Whether the purported conveyance by petitioner Charles W. Basham, Jr. of his lifetime services to a family trust was effective to shift the incidence of taxation on amounts representing compensation to him which he paid to the trust. 2. Whether other income reported by the trust should have been reported by petitioners under sections 671 through 677. 3. Whether any part of petitioners' underpayment of tax for the year in issue was due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners, Charles W. Basham, Jr. (Charles), and Arminda I. Basham (Arminda), are husband and wife and resided in Fort Lauderdale, Florida at the time of the filing of their petition. On July 24, 1975, Charles executed, as grantor, a trust instrument entitled "The Charles W. Basham, *45 Jr. Equity Pure Trust." (Hereinafter the "Trust"). The trust form used by petitioners was one promoted by Educational Scientific Publishers (ESP). Charles was in contact with various persons connected with ESP or using ESP trusts. The trustees of the Trust were listed as Charles, Arminda, and William J. Meehan. William J. Meehan never exercised any authority as trustee and resigned within a few days after execution of the trust instrument. The purpose of the Trust, as set forth in the declaration of trust, was to accept real and personal properties conveyed to the Trust by its creator (Charles), including the use of his "lifetime services" and all remuneration thereefrom. This transfer was made so that Charles could "maximize his lifetime efforts through the utilization of his Constitutional rights." The Trust was to be administered by its trustees, with a majority vote of the trustees required for expenditures (including compensation of the trustees). The Trust was established for a period of 25 years unless by unanimous vote the trustees would determine upon an earlier date or liquidate the Trust at any time "because of threatened depreciation in values, or other good and *46 sufficient reason * * *." Upon liquidation, the assets of the Trust were to be distributed to its beneficiaries. On July 25, 1975, Arminda executed documents conveying certain real and personal property to Charles. She also purported to convey her "lifetime services" to him. The conveyances were made with the understanding that the property was actually to be conveyed to the Trust in exchange for beneficial units in the Trust. On July 26, 1975, Charles executed documents which purported to convey to the Trust "the exclusive use of [Charles'] life time services and all of the currently earned remuneration accruing therefrom", together with certain real and personal property. The real property was the residence of petitioners and much of the personal property was the household furnishings used by petitioners. One document purported to convey to the Trust properties of Charles "which includes the exclusive use of the lifetime services of ARMINDA I. BASHAM and all of the currently earned remuneration accruing therefrom." In return, Charles received beneficial units in the Trust. Transfers of units were made to Arminda. Petitioners were the sole owners of the beneficial units *47 in the Trust. The beneficial interests were divided into 100 units. Ownership of a beneficial certificate did not give the holder any title or interest in, or right to manage, the trust property. This was set forth in the certificates of beneficial interest which stated that the benefits conveyed consisted solely of "emoluments as distributed by the action of the Trustees and nothing more." Petitioners at all times retained full control over the assets of the Trust, and as trustees of the Trust, were empowered to "do anything any individual may legally do" with those assets as specified. After creation of the Trust, petitioners continued to utilize the property which had been transferred to the Trust, together with other property leased to the Trust, for their own benefit and in exactly the same manner as it would have been used had the Trust not been created. The financial records of the Trust were totally inadequate to account for income and expenses of an entity separate and apart from the petitioners. On their own tax return petitioners showed Form W-2 wages on the appropriate line but then deducted payments of "Nominee Income" to the Trust which in large part was comprised *48 of the Form W-2 wages. Petitioners also reported consulting fees from the Trust. Petitioners pre-dated several "consulting fee" checks payable by the Trust to themselves in oreer to shift income tax consequences from one period to another. Both petitioners wrote checks from the Trust account to pay for their own ordinary living expenses. After the creation of the Trust, the Trust reported most of the service income earned by petitioners. The Trust also reported certain other income realized from assets conveyed to it, such as dividends, interest and net gain from capital assets. The Trust deducted from income the cost of maintaining all of the personal assets of Charles which had been transferred to it, as well as certain personal expenditures of petitioners. Included in the deductions were costs of maintaining petitioners' residence. Respondent determined that all income reported by the Trust should have been reported by petitioners. Respondent also determined that petitioners were liable for the addition to tax under section 6653(a). Certain other adjustments were made which are not in issue in this case. These adjustments were made in large part to unravel petitioners' *49 various actions to reflect the income and deductions which respondent determined reflected the true tax picture. OPINION For all the reasons set forth below, respondent's determination must be sustained. [2]
*50 We again reiterate that income is taxable to the one who earns it. Attempts to subvert this principle by shifting income from the actual earner to another entity through contractual agreements, however cleverly drafted, are not recognized as dispositive for Federal income tax purposes whatever their validity under State law. . Petitioners seek to avoid taxation by the use of this so-called family trust. However, similar trusts have repeatedly been found ineffectual to do so with respect to wage or salary earners. See, e.g. , affd. ; , appeal dismissed (10th Cir., July 31, 1980); ; ; , affd. , cert denied . We are compelled to sustain respondent's determination and to add petitioner's case to that growing list of *51 cases. Respondent attributed to petitioners the net income reported by the Trust, which included not only wages but dividends, interest, and net gain from capital assets. Whatever the economic substance of the Trust, the only conclusion that can be drawn is that the grantor trust provisions of sections 671 through 677 require all such income to be taxed to petitioners. ; However, after reviewing the record in this case, we deem it equally clear that the Trust was a sham transaction not recognized for Federal income tax purposes. Section 6653(a) [4] provides for the imposition of a five percent addition to tax for negligence or intentional disregard of rules and regulations. Charles sought the assistance of the ESP representatives in order to do the paper work necessary to support this tax avoidance scheme. We are left with the firm conviction that petitioners knew what they were doing and intentionally disregarded the tax laws. The evidence quite clearly fails to show otherwise. Petitioners have failed to carry their *52 burden of proof on this issue. The addition to tax must be sustained. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
*. This report is prepared pursuant to Rule 182(b), Rules of Practice and Procedure of the United States Tax Court.↩
1. All section references are to the Internal Revenue Code of 1954, as in effect during the year in issue, unless otherwise indicated.↩
2. The Court observes that this case and two others, by agreement of the parties, are test cases for many other petitioners whose pending cases involve issues similar to those in the test cases. These three test cases are -    , -    , and -    . In order to conserve the time of this Court and the parties, petitioner's and respondent's counsel in the other cases have stipulated that their cases will be governed by various issues decided in the test cases. This procedure is realistic and practical and is encouraged by the Rules and practice of this Court. The Court has individually reviewed the ostensibly different ESP trusts involved in the Antonelli, Basham and Corcoran cases. We found their operative provisions to be most similar in nature. The ABC's to be derived from our holdings in Antonelli, Basham and Corcoran↩ are that the arrangements reflected in ESP trusts do not shelter a taxpayer from taxation.
4. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes.--If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩